IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCOS MONZON,<br><br>    Plaintiff,<br><br>  v.<br><br>SOUTHERN WINE & SPIRITS OF CALIFORNIA,<br><br>    Defendant.<br>_____/ | No. C 11-01527 CRB<br><br>**ORDER GRANTING MOTION TO DISMISS** |

      Plaintiff Marcos Monzon has brought suit against Southern Wine & Spirits of California ("SWS" or "Defendant"), alleging four causes of action stemming from events that occurred during and after Plaintiff's employment at Defendant. See Opp'n (dkt. 13) Ex. 1 (Complaint) ¶ 35-65. Defendant is a division of Southern Wine & Spirits of America, Inc., a Florida corporation. The suit was originally filed in state court and removed to this Court based on diversity of citizenship. See Not. of Removal at 1-2.

      Now pending is Defendant's Motion to Dismiss or, in the alternative, to Compel Arbitration and Stay the Proceeding. See generally Mot. (dkt. 12). Plaintiff argues that the arbitration agreement entered into by Plaintiff and Defendant in May 2007 ("Mutual Agreement") is not applicable because Plaintiff's employment was terminated in May 2010 (at which point the Mutual Agreement was no longer operative) and that he was subsequently

rehired without agreeing to the Mutual Agreement or signing a new arbitration agreement. See Opp'n at 5-6.  In the alternative, Plaintiff argues that his claim for intentional interference with prospective business advantage should at least be allowed to proceed to trial because it arose after Plaintiff's employment was indisputably terminated in September 2010.  See id. at 7.  Defendant argues that Plaintiff's employment was not terminated in May 2010 and that, even if it were, the Mutual Agreement is still applicable to all of his claims because it covers all claims that Plaintiff may have against Defendant, regardless of whether they occur during or simply relate to his employment.  See Reply (dkt. 14) at 4-5.

Because Plaintiff's claims against Defendant are all covered by the Mutual Agreement, and the Mutual Agreement is valid and enforceable, this Court GRANTS Defendant's Motion to Dismiss.

## I.  BACKGROUND

Plaintiff Marcos Monzon is a former employee of Defendant.  Opp'n Ex. 1 (Complaint) ¶ 1.  In May 2007, Plaintiff was hired as a Market Specialist for Lesbian, Gay, Bisexual and Transgender accounts in Defendant's Pacific Wine & Spirits division.  Id. ¶ 8.  In August 2009, Plaintiff was transferred to Defendant's newly created "Reserve Team" and began reporting to Joe Arancio.  Id. ¶ 12.  Under this team, Plaintiff's job duties remained largely the same.  Id.  In December 2009, one of Defendant's main suppliers of alcoholic beverages, Diageo, hired Kelly Galea to act as a liaison with its distributors, including Defendant.  Id. ¶ 15.  When Plaintiff transferred to the Reserve Team, his main contact at Diageo was Ms. Galea.  Id.

Plaintiff alleges that Ms. Galea harassed and discriminated against him.  See id.  Plaintiff alleges that Ms. Galea flatly refused to work with him, routinely complained of his accent and refused to meet with him, and claimed to be "tired" of his "faggot accounts."  Id.  In January 2010, Plaintiff reported Ms. Galea's behavior to Mr. Arancio.  Id. at 3-4.  Mr. Arancio assured Plaintiff that he would "take care of it."  Id. ¶ 17.

Plaintiff alleges, however, that Ms. Galea's harassment and discrimination continued. See id. ¶ 21.  On May 3, 2010, Plaintiff tendered his resignation.  Id.  The parties dispute

whether Plaintiff's employment was actually terminated.[1] Notwithstanding this dispute, Plaintiff resumed working shortly thereafter. Opp'n to Motion Ex. 1 (Complaint) ¶ 38.

Between May and September 2010, Plaintiff allegedly continued to be subjected to harassment and discrimination. See id. ¶ 30. On June 1, 2010, Plaintiff met with the head of Human Resources, Tom Passantino, to address his concerns. Id. During this meeting, Plaintiff disclosed to Mr. Passantino that he suffered from and had been treated for obsessive-compulsive disorder. Id. ¶ 25. Plaintiff alleges that following this meeting, Mr. Passantino and Mr. Arancio told Plaintiff on more than one occasion to "stop obsessing over things." Id. Plaintiff also alleges that less than two weeks after this meeting, Mr. Arancio issued to Plaintiff a bogus write-up for being late to work, and Mr. Arancio and Mr. Passantino were planning to find a way to terminate Plaintiff's employment. See id. ¶ 27.

On September 20, 2010, Plaintiff's employment was terminated. Id. ¶ 33. Following this termination, Plaintiff was subsequently offered a position with one of Defendant's suppliers, Moet Hennessy. Id. ¶ 51. Plaintiff alleges that Defendant knew of this relationship and made material misrepresentations and/or misleading statements to Moet Hennessey, resulting in the abrupt end of the relationship between Moet Hennessy and Plaintiff. Id. ¶ 55. Plaintiff alleges that Defendant undertook similar efforts to prevent Plaintiff from obtaining further employment in the wine industry. Id. ¶ 57.

Plaintiff's Complaint includes four causes of action against Defendant. Id. ¶ 35-65. They are: (1) wrongful termination in violation of public policy[2]; (2) retaliation[3]; (3)

---

[1] Plaintiff's Complaint states that "Not wanting to lose one of their most profitable employees Vice Presidents Patrick Daul and Don Galli refused to accept Plaintiff's resignation and convinced Plaintiff to stay." Id. ¶ 21. Plaintiff did not amend his Complaint but alleged different facts in his Opposition, stating that his employment with SWS "unequivocally terminated on May 4, 2010," and he was rehired around May 10, 2010. Opp'n at 4. Defendant claims that Plaintiff's termination was never implemented and his time off was considered a "3 day suspension with no pay." Reply at 4 (citing Tom Passantino Decl. ¶ 3, Exs. B and C).

[2] Plaintiff alleges that Defendant has violated public polices, including "prohibitions against unlawful employment discrimination, set forth in Cal. Govt. Code Sec. 12940, et seq., and protection of employees from business practices that are unfair, fraudulent, or unlawful, set forth in Cal. Bus. & Prof. Code Sec. 17200, et seq." Id. ¶ 40. "Defendants have violated the aforestated public policies by terminating Plaintiff's employment based on one or more of the following unlawful grounds: (1) Plaintiff objecting to discrimination and (2) retaliation based upon Plaintiff's sexual orientation, medical

3

intentional interference with prospective business advantage; and (4) fraud.[4]  See id.

Defendant has filed a Motion to Dismiss, or in the alternative, to Compel Arbitration and Stay the Proceeding.  Mot. at 2.  Defendant bases its Motion on the Mutual Agreement to Arbitrate Claims ("Mutual Agreement") executed as a condition of Plaintiff's employment. Id. at 5.  The Mutual Agreement, signed on May 2, 2007 by Plaintiff and Mr. Passantino, acting on behalf of Defendant, states in part:

> The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present, or future, whether or not arising out of my employment, or its termination, that the Company may have against me or that I may have against the Company, its officers directors employees or agents in their capacity as such or otherwise.  The claims covered by this Policy include–but are not limited to– . . . tort claims, claims of discrimination or harassment, including but not limited to race, sex, gender, sexual orientation, religion, national origin, age, marital status, or medical condition, handicap or disability, under . . . any state antidiscrimination statute, and any other federal, state or local statute, regulation, ordinance or common law doctrine, regarding employment discrimination, conditions of employment or termination of employment . . . and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance or common law doctrine.  Id. Ex. A ("Mutual Agreement to Arbitrate Claims") at 1.

The Mutual Agreement includes a Claims Not Covered by the Agreement section, which states:

> Claims I may have for benefits under an employee benefit or pension plan . . . are not covered by this Agreement. In addition, claims I may have for workers' compensation or unemployment compensation benefits are not covered by this Agreement. Id. at 2.

The Mutual Agreement also includes a Requirements for Modification or Revocation section, which states:

---

condition, ethnicity and/or national origin."  Id. ¶ 41.

[3] Plaintiff alleges that he had "engaged in one or more protected activities by reporting and objecting to defendants' acts...of discriminatory conduct and disparate and harassing treatment," and as a result, he was subjected to "adverse employment actions" such as "denial and forfeiture of certain compensation, reduction in responsibilities and authority, unwarranted criticism and suspension, and termination of his employment."  Id. ¶ 45.

[4] In April 2010, Plaintiff was approached by a manager within a separate division at Defendant company for a similar position in the company.  Id. ¶ 60.  Plaintiff alleges that Mr. Arancio convinced Plaintiff not to pursue the position and again reassured Plaintiff that things would get better and he would "go further in his career" and "would make more money" if he stayed with the Reserve Team. Id. ¶ 61.  Plaintiff alleges that Mr. Arancio and other higher-ups at Defendant company "knew these statements to be false and reasonably expected that Plaintiff would rely upon them to his detriment." Id. ¶ 62.

4

> This Agreement to arbitrate shall survive the termination of any employment and expiration of any benefit plan. It can only be revoked or modified by a written agreement to do so which both I, and an authorized representative of the Company, have signed.

Id.

Plaintiff argues that the Mutual Agreement is not applicable because it terminated when Plaintiff's employment was terminated on May 4, 2010. See Opp'n at 6. Plaintiff claims that because he was rehired around May 10, 2010 without agreeing to the Mutual Agreement or signing a new arbitration agreement, there is no applicable arbitration agreement for his subsequent period of employment from May 10, 2010 to September 20, 2010. See id. In the alternative, Plaintiff argues that his claim for intentional interference with prospective business advantage should at least be allowed to proceed to trial because it arose after Plaintiff's employment was indisputably terminated on September 20, 2010 and is thus not covered by the Mutual Agreement. See id. at 7. Defendant argues that Plaintiff's employment was not terminated in May 2010, and that, even if it were, the Mutual Agreement is still applicable to all of Plaintiff's claims because the Mutual Agreement covers all claims that Plaintiff may have against Defendant, regardless of whether they occur during, or relate to, his employment. See Reply at 4-5.

## II. DISCUSSION

The Federal Arbitration Act (FAA) provides that an agreement to submit commercial disputes to arbitration shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress's purpose in passing the Act was to put arbitration agreements "upon the same footing as other contracts," thereby "reversing centuries of judicial hostility to arbitration agreements" and allowing the parties to avoid "the costliness and delays of litigation." Scherk v. Alberto-Culver Co., 417 U.S. 506, 510-11 (1974) (quoting H. R. Rep. No. 96, 68th Cong., 1st Sess., 1, 2 (1924)).

In applying the Act, courts have developed a "liberal federal policy favoring arbitration agreements." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24-25 (1983). The Supreme Court has emphasized that courts should refer a matter for

5

arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." <u>United Steelworkers of Am. v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582-83 (1960). "In the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." <u>Id.</u> at 584-85. Thus, any doubt about the applicability of an arbitration clause must be "resolved in favor of arbitration." <u>Id.</u> at 589

At the same time, however, the Supreme Court has repeatedly emphasized that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." <u>AT&T Tech., Inc. v. Commc'ns Workers of Am.</u>, 475 U.S. 643, 648 (1986) (quoting <u>United Steelworkers</u>, 363 U.S. at 582). Thus, a federal court's task in reviewing the arbitrability of a particular dispute is to determine whether the parties have each agreed to submit that dispute to arbitration.

"The standard for demonstrating arbitrability is not high." <u>Simula, Inc. v. Autoliv, Inc.</u>, 175 F.3d 717, 719 (9th Cir. 1999). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts <u>shall</u> direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." <u>Dean Witter Reynolds v. Byrd</u>, 470 U.S. 213 (1985) (citing §§ 3 and 4 of the FAA).

The final phrase of § 2 of the FAA, however, provides that arbitration agreements are to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, in addition to determining the arbitrability of a dispute, courts should also determine the enforceability of the arbitration agreement. Grounds for declaring an arbitration agreement unenforceable are determined by "ordinary state-law principles that govern the formation of contracts." <u>Circuit City, Inc. v. Adams</u>, 279 F.3d 889, 892 (9th Cir. 2002) (quoting <u>First Options of Chicago, Inc. V. Kaplan</u>, 514 U.S. 938, 944 (1995)).

//
//

6

### A. Plaintiff's Complaint Suggests That His Employment Was Not Terminated in May 2010

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), review is limited to the contents of the complaint. Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992). All factual allegations set forth in the complaint are taken as true and construed in the light most favorable to the plaintiff. Lee v. City of Los Angeles, 250 F.3d 668, 679 (9th Cir. 2001) (quoting Epstein v. Washington Energy Co., 83 F.3d 1136, 1140 (9th Cir. 1996)). A court may also consider material documents attached to the complaint or documents incorporated by reference into the complaint. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). A court may not, however, look beyond the complaint and consider new facts alleged in a plaintiff's opposition to a defendant's motion to dismiss. See Broam v. Bogan, 320 F.3d 1023, 1026 (9th Cir. 2003) (citing Schneider v. Cal. Dep't. of Corr., 151 F.3d 1194, 1197 n. 1 (9th Cir.1998)). If a court does consider evidence outside of the complaint, it must normally convert the motion to dismiss into a motion for summary judgment. Id. at 907.

Plaintiff's Complaint does not allege that his employment was terminated in May 2010. Opp'n Ex. 1 (Complaint) ¶ 22. His Complaint states that he "tendered his resignation from SWS on May 3, 2010." Id. ¶ 21. However, it continues, "Not wanting to lose one of their most valuable and profitable employees, Vice Presidents Patrick Daul and Don Galli...refus[ed] to accept [Plaintiff's] resignation" and "convinced [Plaintiff] to stay at SWS." Id. ¶ 22.

Plaintiff did not amend his Complaint but alleged different facts in his Opposition, stating that his employment "unequivocally terminated on May 4, 2010," and he was rehired around May 10, 2010. Opp'n at 4. Defendant claims instead that Plaintiff's termination was never implemented and his time off was a "3 day suspension with no pay," referring to an attached declaration by Mr. Passantino. Reply at 4 (citing Tom Passantino Decl. ¶ 3, Exs. B and C). If this were the case, the Mutual Agreement (and arbitration agreement) would still be in effect.

7

Because both Plaintiff's Opposition and Defendant's Reply introduce new facts and attach documents not referenced by or incorporated into the Complaint, the Court does not consider them in resolving the pending Motion. Considering only the facts alleged in Plaintiff's Complaint and accepting them as true, the Court finds that Plaintiff's employment was not terminated in May 2010.

### B. Regardless of Whether Plaintiff's Employment Was Terminated in May 2010, All of His Claims Are Covered by the Mutual Agreement to Arbitrate Claims

The Mutual Agreement broadly covers "all claims or controversies ('claims'), past, present, or future, <u>whether or not</u> arising out of [Plaintiff's] employment, or its termination, that the [Defendant] may have against [Plaintiff] or that [Plaintiff] may have against the [Defendant], its officers directors employees or agents in their capacity as such or otherwise." Mot. Ex. A ("Mutual Agreement to Arbitrate Claims") at 1 (emphasis added). Because the Mutual Agreement does not limit arbitration to claims that arise out of or occur during Plaintiff's employment, it is irrelevant whether Plaintiff's employment was terminated in May 2010. The broad language of the Mutual Agreement thus covers Plaintiff's claims for wrongful termination, retaliation, fraud, and intentional interference with prospective business advantage.

Plaintiff's claims are also covered by the specific language of the Mutual Agreement, which contains an inclusive but not exhaustive list of claims subject to arbitration. Claims subject to arbitration include: tort claims, claims of discrimination and harassment based on race, sexual orientation, national origin, or medical condition under any state antidiscrimination statute regarding conditions of employment or termination of employment, and claims for violation of any federal, state or other governmental law, statute, regulation, or ordinance or common law doctrine. <u>Id.</u> Plaintiff's claims for wrongful termination, retaliation, fraud, and intentional interference with prospective business advantage are all either specifically or

generally listed.

Plaintiff's signing of the Mutual Agreement binds him to arbitration for claims related and unrelated to his employment or termination. Notably, the Mutual Agreement does not expressly exclude from arbitration any of Plaintiff's claims, despite containing a section for "Claims Not Covered by the Agreement." Nor has Plaintiff provided, in the absence of such an express provision, any evidence of an intent by the parties to exclude his claims from arbitration. Considering there is no showing that the parties have modified or revoked the Mutual Agreement according to its "Requirements for Modification or Revocation" section, the Mutual Agreement still applies.

### C.  The Mutual Agreement to Arbitrate Claims is Valid and Enforceable

Plaintiff has not objected to the validity of the Mutual Agreement, but even if he had, the Court would find that the Mutual Agreement is valid and enforceable. California law governs the enforceability of arbitration agreements. See Circuit City, Inc., 279 F.3d at 892 (9th Cir. 2002) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Under California law, an arbitration agreement is unenforceable if it is both procedurally and substantively unconscionable. See Davis v. O'Melveny & Meyers, 485 F.3d 1066, 1072 (9th Cir. 2007). The two must both be present, but not in the same degree; courts use a sliding scale in which the more procedural unconscionability there is, the less substantive unconscionability is required, and vice versa. See Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83, 114 (2000).

The analysis for procedural unconscionability focuses on oppression or surprise due to unequal bargaining power between contracting parties, such as in the case of a contract of adhesion. See id. A contract of adhesion is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Id. at

9

113. Examples include arbitration agreements "imposed on employees as a condition of employment" with "no opportunity to negotiate." See id. at 114-15.

The analysis for substantive unconscionability focuses on an arbitration agreement's overly harsh or one-sided results. See id. at 114. An arbitration agreement is unconscionable unless it contains a "modicum of bilaterality," meaning it makes the results of arbitration binding on both the employee and employer. See Ting v. AT&T, 319 F.3d 1126, 1149 (9th Cir. 2003). To determine whether the arbitration agreement is sufficiently bilateral, courts should "look beyond facial neutrality and examine the actual effects of the challenged provision." See id.

The Mutual Agreement was procedurally unconscionable because it was a contract of adhesion. The agreement was a standardized contract drafted by Defendant, a company with superior bargaining power relative to Plaintiff. See Opp'n at 2. Defendant presented the Mutual Agreement to Plaintiff as a condition of Plaintiff's employment, and Plaintiff presumably had no opportunity to negotiate. Id. Thus, the Mutual Agreement was procedurally unconscionable.

The arbitration agreement, however, is not substantively unconscionable because it is sufficiently bilateral. The agreement makes the results of arbitration binding on both Plaintiff and Defendant. See Mot. Ex. B ("Arbitration Policy") at 13 ("The arbitrator's award shall be final, enforceable and binding on all parties"). It also does not limit the damages normally available under any statute. See id. at 10 ("The arbitrator shall have the authority to . . . award any remedy that could be awarded by a court sitting in the jurisdiction under the relevant law"). It provides for discovery. See id. at 9 ("In no event shall parties be denied the right to discovery sufficient to adequately arbitrate their claims"). It provides for a written decision signed by the arbitrator and judicial review "as provided by law." See id. at 13. It provides for neutral arbitrators per AAA procedures. See id. at 5. Finally, the arbitration agreement does not require Plaintiff to pay unreasonable costs or

arbitrators' fees. See id. at 5 ("Southern shall pay 100 percent in excess of one hundred dollars ($100) of the administrative fee required. The remaining $100 is to be paid by the complaining party"). Because the arbitration agreement is not substantively unconscionable, it is both valid and enforceable. See Davis, 485 F.3d at 1072 (stating that both procedural and substantive unconscionability must be present for an arbitration agreement to be unenforceable).

### D. Because All of Plaintiff's Claims are Covered by the Valid and Enforceable Mutual Agreement to Arbitrate Claims, the Court Dismisses the Case Against Defendant

Under 9 U.S.C. § 3, if a dispute is referable to arbitration under a written arbitration agreement, then the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. However, the Ninth Circuit has held that 9 U.S.C. § 3 also gives courts the authority to dismiss claims that are subject to an arbitration agreement. See Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988); see also Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1060 (9th Cir. 2004). In Sparling, the Ninth Circuit found that the district court acted within its discretion when it dismissed the plaintiff's claims under Federal Rule 12(b)(6) because all of the plaintiff's claims arose out of the contract and were thus barred by the parties' arbitration agreement contained therein. See Sparling, 864 F.2d at 638.

As discussed above, Plaintiff's claims for wrongful termination, retaliation, fraud, and intentional interference with prospective business advantage are all covered by the Mutual Agreement. Because all of Plaintiff's claims are within the scope of the arbitration agreement and the agreement is valid and enforceable, Plaintiff's claims are barred. Dismissal is therefore appropriate.

## III. CONCLUSION

For the foregoing reasons, the Mutual Agreement to Arbitrate Claims applies to all of Plaintiff's claims and is enforceable under the Federal Arbitration Act.

11

1  Accordingly, this Court GRANTS Defendant's Motion to Dismiss.  If Plaintiff intends
2  to pursue the claims alleged in this case, he should initiate arbitration proceedings in
3  accordance with his arbitration agreement with Defendant.
4  **IT IS SO ORDERED.**

6  Dated: July 15, 2011

7  CHARLES  R. BREYER
8  UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California